IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

CLIFFORD A. PORTER,            )
                               )
       Plaintiff,          )
                               )
vs.                            )    Case No. 05-5154-CV-SW-ODS
                               )
JO ANNE BARNHART,              )
Commissioner of Social Security, )
                               )
       Defendant.          )

ORDER AND OPINION AFFIRMING FINAL DECISION OF
COMMISSIONER OF SOCIAL SECURITY

     Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act. For the following reasons, the Commissioner's decision is affirmed.

BACKGROUND

     Plaintiff was born in 1961, was 43 at the time of his hearing and has a high school education. He is 6'1" and weighs approximately 278 pounds. Plaintiff has past relevant work as an industrial truck operator, laborer and driver. His alleged onset date was February 10, 2004, due to a clot in his leg and lung and high blood pressure.

     On February 10, 2004, Plaintiff reported to the emergency room at Skaggs Community Health Center in Branson, Missouri. R. at 196. Plaintiff complained of chest pains, shortness of breath and swelling in his right leg. R. at 207. Plaintiff had been taking Lipitor and Hyzaar, but ran out of the prescriptions three months prior to his hospital visit and did not refill them. R. at 207. Plaintiff was discharged with a diagnosis of pulmonary embolism, extensive deep venous thrombosis and fever. R. at 205. At the time of discharge, his leg was still swollen, but significantly less tender. Plaintiff was prescribed Levaquin, Vicodin, Lovenox and Coumadin. Further, Dr. Thomas Woodward recommended at least six months of treatment and a slow taper of his Coumadin prescription. R. at 205.

Plaintiff again presented the emergency room in March 2004, complaining of chest pain. R. at 196. His CBC was normal, a chest x-ray and CT scan to rule out pulmonary emboli was essentially negative, and an ultrasound of his leg showed some improvement of the thrombophlebitis. He continued to have a clot in his superficial femoral popliteal vein. R. at 197.

Plaintiff's treating physician, Randall Sukman, M.D., saw Plaintiff while he was in the hospital during his initial stay for treatment of his blood clot. R. at 235. On Plaintiff's February 24, 2004 visit, Dr. Sukman's notes state "Disability paperwork" and "bloodwork." R. at 233. While Dr. Sukman's treatment notes are difficult to read and often consist of copies of poor quality, Plaintiff's subsequent visits seem to concern "edema," as well as "pain and swelling in leg." R. at 219-230.

On July 7, 2004, Dr. Sukman filled out a Medical Source Statement (MSS) for Plaintiff, stating he is able to lift but not carry less than five pounds, stand and/or walk continuously for fifteen minutes, stand and/or walk throughout a workday for less than one hour, sit continuously with his leg elevated for one hour, and sit throughout a workday for two hours. R. at 254. Plaintiff was limited in his ability to push or pull due to his right leg, and he was never to climb, stoop, kneel, crouch or crawl. R. at 255. Dr. Sukman noted Plaintiff needed to keep his leg elevated and should not keep it immobilized for prolonged periods of time. R. at 255.

On November 16, 2004, Plaintiff underwent an arterial examination at St. John's Regional Health Center. R. at 273. Ramon Shane, M.D., noted the test showed no evidence of "any significant arterial obstructive disease demonstrable in either lower extremity with excellent indices and waveforms seen." R. at 273.

On November 17, 2004, Plaintiff presented to Branson Oncology Clinic for treatment and was examined by Dr. Pairote Jaroonwanichkul. R. a 279. Plaintiff told Dr. Jaroonwanichkul he smoked a half a pack of cigarettes a day, but does not drink alcohol. R. at 278. Dr. Jaroonwanichkul gave Plaintiff a "Job Stocking" to wear during the day. He also recommended physical therapy to increase endurance, but noted Plaintiff did not wish to participate. Dr. Jaroonwanichkul further noted Plaintiff's condition was good enough for him to go back to work. R. at 279.

On November 29, 2004, Plaintiff saw Dr. Dewey Ballard for a consultation. R. at 265. Plaintiff informed Dr. Ballard that his pain from the original blood clot was never resolved, it hurt to sit and stand, there was weakness in his leg and he occasionally uses a cane. R. at 265. Dr. Ballard noted there was no tenderness in the calf or discoloration of skin, but there was trace edema in the right lower extremity. Dr. Ballard stated it was unusual for an uncomplicated deep venous thrombosis to cause chronic pain and the pain usually resolves if the clot dissolves over a period of several weeks. R. at 265. Dr. Ballard opined Plaintiff might have early mild venous insufficiency based upon his swelling. R. at 266. Dr. Ballard completed a residual functional capacity (RFC) form where he noted Plaintiff could lift 20 pounds occasionally, ten pounds frequently, stand at least two hours in an eight-hour workday, sit an unlimited amount of time and was only limited by his lower extremities in his ability to push or pull. R. at 267-68.

Plaintiff returned to Branson Oncology Clinic on December 16, 2004. Plaintiff told Dr. Jaroonwanichkul he needed to put his leg up, could not sit in one position for very long and did not want to take pain medication. Dr. Jaroonwanichkul again recommended physical therapy and released Plaintiff to return to work. He told Plaintiff to "be active" and walk regularly. R. at 275.

In January 2005, Plaintiff returned to Dr. Sukman, complaining of blood in his urine and his medication was adjusted. R. at 301. In May 2005, Dr. Sukman filled out a second RFC form stating Plaintiff could frequently lift ten pounds, occasionally lift 15 pounds, continuously stand for 30 minutes, and throughout an entire day for one hour, sit continuously for 45 minutes, and throughout an entire day for four hours. R. at 314. Plaintiff could never climb, balance, stoop, kneel, crawl, or crouch. Plaintiff's use of medication did not cause a decrease in his concentration, persistence, pace or any other limitation. R. at 315.

Plaintiff's hearing before ALJ Linda D. Carter was held on April 26, 2005. R. at 47. Plaintiff testified he uses a cane, even though his doctor has never told him to do so. R. at 51. He testified that other than lack of sleep, there are no side effects to his medication. R. at 52. Plaintiff testified that he can read and write, albeit slowly. R. at 50. It was his understanding that his blood clot was caused by sitting for long periods of

time. R. at 52. Plaintiff also stated he battled with depression as a result of his unemployment and his wife's duty as the sole breadwinner for the family. R. at 66. He rarely wears his compression hose because it is uncomfortable and hot. R. at 81.

The ALJ elicited testimony from Vocational Expert Terri Crawford ("VE".) The VE characterized Plaintiff's past relevant work experience as medium work, semi-skilled labor performed at the sedentary and medium exertion level. The VE was asked to assume a person Plaintiff's age, education and work experience, who has medical impairments including phlebitis, thrombophlebitis, pulmonary embolism, deep vein thrombosis, obesity, a genetic blood disorder and lupus factors, high blood pressure and depression. As a result, such person could perform no more than sedentary work, must avoid exposure to, or climbing of, significant unprotected heights, commercial driving, exposure to potentially dangerous and/or unguarded moving machinery, avoid pushing and pulling with the right lower extremity. The VE was to assume such person needed an even surface upon which to walk and stand, must avoid exposure to vibration, wear a compression hose on an as-needed basis, and be able to elevate the lower extremity approximately eight to 12 inches. Such person would be limited to simple to detailed, but not complex, job instructions. Finally, such person would need to alternate sitting and standing at approximately 30-minutes intervals. The VE testified that such person would be precluded from performing Plaintiff's past relevant work as an industrial truck operator. R. at 83-84. The VE further testified that Plaintiff could perform sedentary unskilled clerical work, such as a charge account clerk, general clerk and informational clerk. R. at 84-85.

The ALJ found Plaintiff is not disabled. Plaintiff is a younger person with a general high school education, has prior semi-skilled work experience, and the RFC to perform sedentary work. Plaintiff has not engaged in substantial gainful activity since the alleged onset date and has severe impairments of obesity, history of deep vein thrombosis and pulmonary embolus, right leg venous insufficiency, and lupus. He has hypertension and depression, which are controlled with medication. The combination of impairments does not meet or medically equal one of the listed impairments. The ALJ

4

found that Plaintiff has the ability to perform a significant number of jobs in the national economy. R. at 23.

II.  DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole.  Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion.  [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion."  Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted).  Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision.  Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)).  Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

A. Plaintiff's Credibility

Plaintiff alleges the ALJ erred by failing to conduct a proper credibility analysis. The familiar standard for analyzing a claimant's subjective complaints of pain is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced.  The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.

5

Case 3:05-cv-05154-ODS   Document 11   Filed 08/17/06   Page 5 of 8

> The absence of an objective medical basis which supports
> the degree of severity of subjective complaints alleged is just
> one factor to be considered in evaluating the credibility of the
> testimony and complaints. The adjudicator must give full
> consideration to all of the evidence presented relating to
> subjective complaints, including the claimant's prior work
> record, and observations by third parties and treating and
> examining physicians relating to such matters as:
>
> 1. The claimant's daily activities;
> 2. the duration, frequency and intensity of the pain
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's
> subjective complaints solely on the basis of personal
> observations. Subjective complaints may be discounted if
> there are inconsistencies in the evidence as a whole.

739 F.2d at 1322. The ALJ determined the medical evidence does not support the claimant's contention of severe leg pain. No doctor ordered Plaintiff to rest, or recline, require Plaintiff to use a cane. R. at 19. Plaintiff refused to participate in physical therapy or take pain medication as suggested by Dr. Jaroonwanichkul. R. at 279. Dr. Ballard noted Plaintiff's complaints of pain were unusual given his diagnosis. He further noted Plaintiff was able to walk normally and got on and off the exam table without difficulty. R. at 265. Accordingly, the ALJ was justified in according more weight to those pieces of evidence than to Plaintiff's testimony.

B. Dr. Sukman

Plaintiff also claims the ALJ erred by not giving more significant weight to the opinion of Dr. Sukman. Treating physicians are generally entitled to substantial weight. Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995). However, a treating physician's opinion is not conclusive and must be supported by medically acceptable clinical data. Kelly v. Callahan, 133 F. 3d 583, 589 (8th Cir. 1998). As noted above, Dr. Sukman's treatment notes were often illegible and what can be read offers little

6

evidence of Plaintiff's specific limitations. More importantly, specialist Dr. Jaroonwanichkul also treated Plaintiff and reported Plaintiff did not have significant limitations and could return to work. R. at 265. A specialists' opinion is generally entitled to more weight than a treating physician. Hensley v. Barnhart, 352 F.3d 353, 356 (8th Cir. 2003). The ALJ considered the record as a whole and afforded Dr. Sukman's opinion proper weight.

C. Plaintiff's Residual Functional Capacity

Plaintiff also alleges the ALJ did not properly explain how he determined Plaintiff's RFC. After restating the medical evidence, the ALJ found Plaintiff's RFC to lift and/or carry 10 pounds, stand and/or walk as much as two hours in an 8-hour workday and sit about six hours in an 8-hour workday with a sit/stand option approximately at 30 minute intervals. Plaintiff is unable to push or pull with his right lower extremity and needs to elevate his feet to foot stool level as needed, he is to avoid uneven surfaces and vibration. Further, Plaintiff was limited to simple to detailed, but not complex, job instructions. R. 20-21. These limitations are taken from Dr. Sukman, Dr. Ballard and Dr. Jaroonwanichkul's notes. R. at 254, 267 and 275.

Plaintiff further alleges the ALJ erred by not including his alleged difficulty in reading and comprehension. Plaintiff provided his high school transcript, which shows Plaintiff performed poorly in high school and apparently had some disciplinary problems. R. at 194. However, Plaintiff admits he can read and write, just slowly. R. at 51. The ALJ noted Plaintiff was able to read and write sufficiently to complete the various disability forms necessary for this process. R. at 20. Therefore, the ALJ's determination of Plaintiff's RFC was properly based upon the record as a whole.

D. Vocational Expert Testimony

Plaintiff alleges the ALJ erred in affording too much weight to the VE's testimony, arguing the VE contradicted the Dictionary of Occupational Titles ("DOT"), which should have been controlling. The ALJ specifically inquired into the possible conflicts between the VE's testimony and the DOT. The VE explained she relied on The Unskilled

7

Employment Quarterly published by the U.S. Department of Labor because the DOT does not address the sit/stand options, compression hose or elevating one's feet. R. at 85.  She further testified that her opinion was based upon her personal experience. R. at 86.  Therefore, the ALJ properly relied on the VE's testimony.

## III.  CONCLUSION

The Commissioner's final decision is supported by substantial evidence in the record as a whole, as is therefore affirmed.
IT IS SO ORDERED.

DATE: August 17, 2006

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT

8

Case 3:05-cv-05154-ODS   Document 11   Filed 08/17/06   Page 8 of 8